We'll move to our second case this morning. Jonathan Aguirre-Zuniga v. Garland Mr. Katz is here in the courtroom. Mr. Katz, could you keep your voice up a little bit?  I have a question about the applicability of the realistic probability test in this context. The Supreme Court in the Schuller case discussed in deletory seemed to clarify that the realistic probability test, or at least separated the categorical approach into two aspects. One applies to enumerated offenses in federal law and the generic offense analysis, and the realistic probability test has arisen in that context. But this is a conduct-based categorical approach as Schuller described the different aspects of the categorical approach, not an enumerated offense, generic federal offense. I believe deletory arose in the context of, I want to say a serious drug felony. I can't remember the exact sentence enhancement ground, but that was a different provision. So that was a context. They all fall within the Schuller category of conduct-based federal offenses, where the comparison is elements to elements, state crime to the federal crime. It's not a generic definition that the court has created because the statute at issue is an enumerated offense, the classic example being burglary, of course, in the ACCA. I think you understand what I'm driving at here. There's a distinction between the categorical approach as applied to enumerated offenses in federal law that require the court to define the generic crime and then do the comparison. The realistic probability test arose in that context. It doesn't really apply here. Well, and no, Your Honor, that's certainly not how we address this in our brief. I don't think Schuller or deletory somehow keeps the realistic probability test from applying here. You're still looking at the realistic probability test applies where the categorical approach applies, unless you have a conduct-based circumstance like where you're mentioning with Schuller, where the terms of the statute suggest that you are focusing not on an offense but on some conduct. So where you have words like involving or relating to or something suggesting that you can focus on the conduct of the offense or the sort of circumstances there and not just matching elements to elements. So we didn't understand and we don't understand deletory to suggest that in this context that we're talking about here, certainly drug trafficking crimes under the INA where you're looking at whether something can be punishable as a felony under the Controlled Substance Act, that's the ultimate question we're asking, right, is whether this is punishable as a felony. We don't understand that to fall somehow outside of the realistic probability approach or the way that Schuller may have suggested in a different context. So I don't think either party has been operating under the assumption here that we are somehow outside of the realistic probability approach. We are looking at classic categorical approach and we don't have the sort of Schuller context where conduct would come into play and take us outside of that strict elements to elements matching. But the thrust of the deletory case is that once the elements are a mismatch, that's the end of the inquiry. We don't ask whether there's a realistic probability that the state might prosecute under one of the overbroad options in the state statute. And that's why I'm asking the question. When we're in the zone of a conduct-based categorical approach rather than an enumerated offense where the federal court is conjuring a generic set of elements for the generic offense and then performing the matching exercise, we're dealing with a set of federal elements. Right. That define a controlled substances violation of this sort. Yes. That falls into the conduct-based inquiry under Schuller, just as it did in deletory. Right. I think the answer to your question, I think the reason maybe I'm understanding this differently is because I think even maybe to get to your question more directly, even under an elements approach, when we match these statutes element to element, you've got, you would still turn to the realistic probability test here because on the elements, nobody's suggesting, neither party here is suggesting that iso- of methamphetamine is established. So just matching the drug and everything else in the statute here, deliver matches up with distribute. Petitioner does not dispute that. Pure or unadulterated does not, is not a mismatch to the CSA. So the only assertion here in terms of overbreadth is that this statute includes positional isomers. Well, if the realistic probability test applied in this context, deletory would have come up differently. Well, Your Honor, no, that's not true under this court's reasoning in deletory. Right. Because the realistic probability test only applies when a statute is not overbrought on its face. Deletory found that, well, that statute clearly referred to the schedules, which clearly referred to isomers. And then this court went on to define isomers to include positional, geometric, and optical. So it did not need to turn to the realistic probability test. I don't think that's right. The realistic probability test is essentially a savings test. If a state statute is overbought, then the conviction still might count for whatever purposes it's being used. Here, deportation, more commonly recidivism, right? Correct. It still counts if there's no realistic probability that the state would prosecute under one of these bizarre options that doesn't fit the federal crime. Correct. But that only applies. So, and this goes to your point about deletory, you only turn to that approach if you don't have a statute that is facially overbought. And the reason that deletory was facially overbought is because there you were referring to the Schedule II listing of methamphetamine. No, if a statute isn't facially overbought, that's the end of the inquiry. There's no reason for an inquiry into realistic probability of prosecution. If it's a match, it's a match. And the conviction counts for whatever purposes. Sure. Of course, Your Honor, and our position is that it's not a match because the statute itself needs to include the term explicitly or in some way, as your questions to opposing counsel suggested, cross-reference a definition, something in the drug code to suggest. You're blending your other argument about this 1.1 offense doesn't cross-reference the schedules, so it is a categorical match. Yes, of course, that's the argument here. And I think when you say cross-reference, there's several ways to do it, and I want to be very clear. We are not just saying that this statute doesn't have isomers. That's the end of the question. There are several obvious ways that a state can define a substance in its code to include something listed elsewhere. Cocaine might be the best example. Opposing counsel listed this just now, and he said that cocaine references to the schedules. And you, Judge Sykes, said, well, that distinguishes it from our circumstances. It's actually even worse. Cocaine has a definition in the code. That's why it's different from our circumstances. As opposing counsel said, it's the exact same circumstances where you have an offense that has a specific provision and then is punished under the general schedules, and yet there you have Indiana having defined cocaine, offered a definitional provision so that wherever it is listed in the code, you know what it means. Well, can we go back to meth specifically? What is the government's definition of methamphetamine under this Indiana statute? If your position is we are not to refer to the schedules, what's the definition of meth that you are looking to? Your Honor, the government's position here is that meth means meth unless anything in the statute suggests otherwise. And meth means meth. What does meth mean? Meth means the street definition of meth, which is optical isomers, the L and D isomers, which the government mentioned in our brief. That has always been the sort of street and general understanding of what methamphetamine means so that this court or any court would only get beyond that definition if something in a state statute actually lists anything explicitly beyond optical isomers. So, for instance, in Lorenzo and Rodriguez-Gamboa in the Ninth Circuit, the reason I think federal courts are now starting to inquire as to the specific isomeric composition of methamphetamine started because California, in its statute, defined meth specifically to include both optical and geometric isomers. Where do you find the Indiana legislature saying the definition of meth is the street definition of meth and here's what the street definition of meth is? It does not, Judge Jackson. To be very clear, our position here is we do not need to supply affirmatively exactly what methamphetamine's isomeric composition is. Our position is that meth, where it is referred to in the statute, means meth as it has always been understood, which is the optical isomers, the L and the D isomers. This idea of it extending beyond those terms, you can only start that analysis, or you must start that analysis with the terms of the statute itself. And if it does not include either geometric or now positional, now that we know geometric don't exist, if a statute does not include either of those terms, then you must turn to the realistic probability test to supply that definition or to supply whether or not the state actually punishes those. So to your question directly, we don't supply an affirmative definition. We are completely fine with that because under the categorical approach, you need to have some indication that starts in the statute that a state is actually punishing more than just optical isomers of methamphetamine. And I'll note that this court in De La Torre suggested as much because it dealt with the specific argument that the statute we're dealing with here should be treated identically to the statute in De La Torre. And it said, we're not convinced that that interpretation is correct. We suspect that's because, again, this statute does not use the word isomers. It does not refer to Schedule II. And it does not have, the Indiana Code does not have a definitional provision for methamphetamine, unlike, for instance, cocaine. Now, I also want to note, Your Honors, that we flagged this in our brief. Indiana has since De La Torre, since that decision amended its definition to make clear that it means to cover only optical isomers of methamphetamine. So that doesn't apply here technically in terms of it didn't go into effect until after the offense here. But it's very important to our interpretation of the statute here because if this court does feel like it needs to define isomers or somehow read that into the statute and then figure out exactly what isomers that might mean, if it does, well, now we have a very clear expression from the Indiana legislature of what it means isomer to extend to. And that's only optical isomers, which, of course, matches the federal definition. Now, the clear differences between De La Torre in this case are exactly what I just mentioned in terms of the statute being methamphetamine, pure or unadulterated, nothing more. And that pure or unadulterated itself is an important caveat here because if this court really wanted to, or if Indiana, excuse me, really wanted to limit its definition of meth to exactly what it referred to elsewhere in the statute, like in the schedules, it would have just said meth. It started to actually define the term itself in our statute here by saying methamphetamine, pure or unadulterated, but it did not list isomers. So at a minimum, our argument is this. We are not saying that this court needs to find that these statutes have different means. We are saying that at a minimum, it is not clear that they have the same definition, and that is the showing that petitioner needs to make to show that the statute is facially overbroad. If there are no other questions, Your Honor, we ask the court find that this statute is not facially overbroad and turn to the realistic probability test and show that the statute very clearly that does not have isomers, very clearly cannot extend specifically to positional isomers in meth, and ask that the court deny this petition for review. Thank you. Thank you, Your Honor. Mr. Katz. Thank you, Your Honor. I'd just like to make two very quick points. The first is in response to the government's point that meth just means meth. It's important to disentangle two aspects of that. Whether there's a scientific consensus as to the isomeric scope of methamphetamine is one question. Whether it's self-explanatory for a criminal statute to use the word methamphetamine is a very different question and the operative question. And we point the court to the fact that all three states in the Seventh Circuit define methamphetamine differently, and all three of those states, in turn, define methamphetamine differently than the federal government. And so meth just means meth is not an answer. The question is, what does Indiana mean when it says meth? And the government said, well, Indiana started to define it with this phrase pure or adulterated. But we know with absolute certainty that pure or adulterated is not a definition because those same words are in the del Torre statute, which was found overbroad. Does anything about this chemistry project have anything whatsoever to do with the policies behind the Immigration Code? And eligibility for and the propriety of removal or relief from removal? I mean, this makes my head explode because I don't see how it has anything to do with whether someone should be removed or not removed. We, of course, acknowledge, Your Honor, that the categorical approach can and often is divorced from the facts of a specific case and sometimes seemingly divorced from the policy behind a statute. But let me respond in this way. The value that this enforces or the value that this promotes is predictability in, among other things, say, defense counsel representing Mr. Aguirre. Is this predictable? You've got to be kidding me. There's nothing predictable about this. It's arbitrary. These are arbitrary distinctions that we make in all these cases. It's just, you know, based on legal definitions that have not a lot of real-world consequence. Well, in this case, Your Honor, again, we don't deny that these are very small differences. There's no evidence in the record, for example, that Mr. Aguirre was advised that taking this plea versus the del Torre statute plea would have led to, according to the government, drastically different removal consequences. And that's an extremely valid point. And just one last point, Your Honors. I see my time is very low. The government said that it does not need to provide an affirmative definition of methamphetamine, and with all due respect to the government, that simply cannot be correct, that the government can meet its burden for saying that a state crime can remove someone from the country automatically as an aggravated felon without telling this court what the statute means, unless the court has any further questions. Thank you. Thank you very much. Thanks to both counsel. The case is taken under advisement.